# Bennett *v.* The Vinton Lumber Company, Limited Appellant.

*Deed—Contract—Timber contract—Reversion—Condition—Limitation.*

Where an owner of standing timber by articles of agreement, grants, bargains and sells the same to another, and it is stipulated that the grantee "shall cut and remove said timber" on or before a day mentioned, all timber remaining uncut on the day mentioned will revert to the grantor whether there are words of reversion or not in the articles of agreement.

Argued May 1, 1905. Appeal, No. 214, April T., 1905, by defendant, from judgment of C. P. Cambria Co., Dec. T., 1903, No. 214, on verdict for plaintiff in case of A. A. Bennett v. The Vinton Lumber Company, Limited. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for the wrongful cutting of timber. Before O'CONNOR, J.

Defendant presented the following points:

1. That the defendant's title to any and all timber standing on this land which it claimed title to by virtue of the contract made between A. A. Bennett, the plaintiff, and V. S. Barker et al., dated December 29, 1897, and recorded in deed book vol. 116, page 53, and subsequently conveyed or assigned to the defendant company, ceased on and after April 1, 1903. *Answer:* We affirm the point. [6]

2. That the defendant having failed to cut and remove the timber which was purchased by them from the alienee of the plaintiff on or before April 1, 1903, all timber sold by virtue of the agreement entered into between the plaintiff and V. S. Barker et al., their heirs and assigns, immediately reverted to and became the property of the plaintiff. *Answer:* We have so instructed you and therefore affirm the point. [7]

3. That the parties to the agreement dated December 29, 1897, made time of the essence of the contract and a failure of the parties claiming the said timber by virtue of the said agreement to cut and remove the timber within the time specified, worked a forfeiture of their rights to the said timber as well as any privileges they had to enter upon the said land to cut and remove the same. *Answer:* We affirm the point. [8]

The court charged in part as follows :

[In construing this agreement, we construe it to mean that the defendant company, who succeeded to the rights of Barker Brothers, by reason of the grant from them, had the right to take any and all of the hemlock timber from that land, by cutting and removing it from the land, within five years ; that is, on or before April 1, 1903.

It has been suggested that the parties themselves treated this contract, or this clause in the contract as a covenant, and that there was no limitation to the right whatever to remove the timber.   We cannot say that there is evidence in the case that they did so treat this clause in the agreement.   There was an offer to prove that another agreement had been made ; we refused the offer because it was not sufficient for the purpose offered ; that is, if what was contained in the offer were admitted and proven, it would not constitute a contract binding upon the plaintiff.]   [9]

Verdict and judgment for plaintiff for $170.13.   Defendant appealed.

*Errors assigned* among others were (6–9) above instructions, quoting them.

*Alvin Evans*, with him *John E. Evans*, for appellant.—The courts of law and equity in Pennsylvania lean against a construction which works a forfeiture : Newman v. Rutter, 8 Watts, 51 ; Lehigh Coal & Nav. Co. v. Early, 162 Pa. 338 ; McKnight v. Kreutz, 51 Pa. 232 ; Thompson v. Christie, 138 Pa. 230.

A condition stipulated in a deed of conveyance may be enforced by ejectment ; but a consideration even amounting to a covenant on the part of the vendee, cannot : Cook v. Trimble, 9 Watts, 15 ; Hoit v. Stratton Mills, 54 N. H. 452 ; Green v. Bennett, 23 Mich. 464.

In a deed of conveyance for land, reserving the right to cut and remove all the pine timber trees at any time within two years from date of deed, it was held that the absolute right of property in the trees was not excepted out of the estate granted ; but only a right reserved to enter within two years, to cut and remove the same : Rich v. Zeilsdorff, 22 Wis. 519.

Time may be made a material and essential part of a contract by the express undertaking of the parties as set forth therein, and when so made, must be observed unless waived by the acts or declarations of the party : Shaw v. Turnpike Co., 2 P. & W. 454.

To the same purpose is the case of Hawman v. Turnpike Road Co., 2 Woodward, 332; Fruit Co. v. Roberts & Co., 8 Pà. Superior Ct. 500.

*S. L. Reed,* for appellee.—Where a deed of growing timber contains a proviso that the same shall be removed within a certain time, what remains uncut at the expiration thereof belongs to the grantor of the soil or his grantee : Strasson v. Montgomery, 32 Wis. 52 ; Pease v. Gibson, 6 Me. 81 ; Howard v. Lincoln, 13 Me. 122; Saltonstall v. Little, 90 Pa. 422 ; Utley v. Lumber Co., 59 Mich. 263 (26 N. W. Repr. 488) ; Haskell v. Ayres, 32 Mich. 93 ; Gamble v. Gates, 92 Mich. 510 (52 N. W. Repr. 941) ; Golden v. Glock, 57 Wis. 118 (15 N. W. Repr. 12) ; Patterson v. Graham, 164 Pa. 234 ; Boults v. Mitchell, 15 Pa. 371.

OPINION BY ORLADY, J., July 13, 1905.:

By an article of agreement dated December 29, 1897, A. A. Bennett granted, bargained and sold " all the hemlock timber standing and lying on " about 100 acres of land in Cambria county to Barker Brothers, together with, to quote from the writing : " the right of ingress, egress and regress into and upon the described premises, for the purpose of cutting and removing said timber; and further the said party of the first part doth covenant and agree to guarantee the title to the said timber and to protect the parties of the second part in the exercise of all the rights and privileges hereinafter set forth, in relation to the cutting and removal of the same, and hereby agrees that the same is being conveyed clear of all incumbrance. The said parties of the second part, their heirs and assigns, shall cut and remove said timber, on or before the first day of April, 1903.    In consideration whereof the parties of the second part do hereby covenant and agree to pay or cause to be paid unto the said party of the first part, the sum of $700, in hand, the receipt whereof is hereby acknowledged." On

December 31, 1898, Barker Brothers sold and conveyed to the Vinton Lumber Company, Limited, all the hemlock timber standing and lying on the said tract of land conveyed to them by A. A. Bennett, with the right of egress and regress upon said land for the removal of said timber, at any time before April 1, 1903. On September 19, 1903, and days following, the Vinton Lumber Company began cutting certain hemlock timber on the described land which had not been cut or removed prior to April 1, of that year, and for the timber so cut this action of trespass was brought.

The appellant contends that inasmuch as there was no express language in the contract, providing for the reversion of the timber to the plaintiff in case of failure to remove the same, on or before April 1, 1903 that the subsequent removal of the timber would be but a breach of covenant, and the title to the timber would still remain in the defendant company; and further that the purchase money having been paid in full, the failure to remove the timber within the time specified would not work a forfeiture and reinvest in the grantor the timber conveyed to Barker Brothers. The plaintiff's contention being that the words, " the said parties of the second part, their heirs and assigns, shall cut and remove said timber, on or before the first day of April 1903," determine a condition subsequent, which became effective at the expiration of the time stated.

Whether the words amount to a condition, or a limitation, or a covenant may be a matter of construction, depending on the contract. The intention of the parties to the instrument, when clearly ascertained, is of controlling efficacy, though conditions and limitations are not readily to be raised by mere inference and argument. The distinctions on this subject are extremely subtle and artificial; and the construction of a deed, as to its operation and effect, will, after all, depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in the given case: 4 Kent's Comm. 133.

It was held in Commonwealth v. Stauffer, 10 Pa. 350 that: " A condition is aptly introduced by such phrases as ' upon condition,' 'so that,' ' provided,' ' if it shall happen.' While words of limitation are ' while,' ' so long as,' ' during,' ' until; ' it is not so much the form of the provision, as it is the inten-

tion of the grantor or testator which determines whether a condition or limitation has been created. Expressions should therefore be so construed as to carry out the object of the testator."

And in Mitchell on Real Estate and Conveyancing in Pennsylvania, pp. 178–181, it is said : " A condition may operate to determine an estate, as well as a limitation, but it does not of itself bring the estate to a close ; it gives to the grantor and his heirs, the right to do so, which they may or may not exercise, and it is known by different words, from those which create a limitation. The ordinary words are : ' on condition that,' ' so that,' ' provided, that if,' ' on pain of forfeiture.' No precise words are necessary, and it cannot be asserted that a clause, under all circumstances, will operate as a condition, even where it begins with the words just mentioned, and it is sometimes a difficult matter to distinguish between a condition and a limitation ; . . . . in cases of a condition subsequent, the test is the time of performing the condition, and this depends upon the intention of the party creating the condition to be arrived at upon a fair construction of the whole instrument." And in Elphinstone on Deeds, sec. 446, the rule is laid down as follows : " There are no precise technical words required in a deed to make a stipulation a condition precedent or subsequent, neither doth it depend upon the circumstances whether the clause is placed prior or posterior in the deed, so that it operates as a proviso or covenant. For the same words have been construed to operate as either one or the other, according to the nature of the transaction."

Every contract is to be construed with reference to its object. The whole of its terms and context must be considered in endeavoring to collect the intention of the parties, even although the immediate object of inquiry be the meaning of an isolated clause. With like effect we have Schlegel v. Herbein, 174 Pa. 504, where it is said : " But where a deed is inartificially drawn, too much stress is not to be laid upon the terms employed, or, as is evidenced in the decision of Ivory v. Burns, 56 Pa. 300, upon the position of any clause indicative of the intention of the parties, the cardinal rule being that the latter is to be effectuated, if lawful, by construing the instrument as a whole and giving force to every part of it."

Vide also Wager v. Wager, 1 S. & R. 374 ; Means v. Church 3 W. & S. 303 ; Phillips's Appeal, 93 Pa. 45 ; Paschall v. Passmore, 15 Pa. 295.

The contract by which Bennett sold to Barker Brothers and Barker Brothers to the defendant company, the hemlock timber standing and lying on the land described, under the Act of May 22, 1895, P. L. 113, is to be taken and deemed a deed, conveyance or contract, conveying and vesting an interest in land.   The only question for our decision is the character of the estate created by the writing.

In Scheetz v. Fitzwater, 5 Pa. 126, a conveyance of a mill dam, or pond of water and mill race, and a perch of land on each side thereof, for the use and service of a certain mill, with the land thereunto belonging, and for no other use whatsoever, the title was held to be base fee, determinable on disuser as a pond.   The words used in this agreement, limiting the time, for which the parties of the second part, their heirs and assigns, "shall cut and remove said timber" determines the extent of their title in the timber.   Unless so interpreted the clause would be meaningless and any other construction would do violence to the plain meaning and common understanding of the words employed.   They were adopted by the defendants in their purchase from Barker Brothers : " With the right of egress and ingress upon said land, for the cutting and removing of said timber, at any time before April 1, 1903."

If this construction needed any support, it is furnished by the last mentioned agreement, in which the timber on seven separate tracts was purchased by the defendant company from Barker Brothers and the time within which it is given the right of egress and ingress, for the purpose of cutting and removing the timber, is stated to be at any time "prior to March 29, 1903," "before April 1, 1903," "before Jan. 27, 1908," "before Dec. 24, 1901," "within five years from Dec. 28, 1898," "at any' time within seven years from Dec. 28, 1898," following the exact limitations in the several grants to Barker Brothers.   The hemlock timber was the only subject of the conveyance, and the time within which it was to be removed, was as expressly limited to April 1, 1903.

Contracts containing similar provisions have been construed in the courts, in a number of the states, and the weight of

authority supports the plaintiff's contention, that as to the timber remaining uncut, at the expiration of the time limit, the title reverts to the owner of the realty.   In Saltonstall v. Little, 90 Pa. 422, the reservation was for "all the pine timber, on six warrants or tracts, together with the right and privilege to cut, remove, and carry away the same, or any part thereof, at any time and all times also the right of ingress and egress, at any and all times, for the space or term of twelve years, from the date first above written."   In regard to which the Supreme Court said: "Whether we regard the clause in controversy as a reservation or exception, the result is the same, for in either event, Kingsbury, or his grantee of the timber, was restricted to twelve years in which to cut and remove it.   The reservation of the timber was not an absolute severance of it from the freehold.   It was a severance only upon condition of its removal, within twelve years.   It is true no such express condition appears and the words proviso, ita quod and sub conditione, so much relied upon by Lord Coke, are not to be found in the reservation, but a condition may be implied as well as expressed. There is abundance in the reservation from which such condition may be implied.   'If a man grant all his trees to be cut within five years, the grantee cannot take any after the expiration of five years, for this is in the nature of a condition annexed to the grant: Bacon's Abridgement, Title, Grant.'"   The cases hold almost without exception, that the purchaser has no title to any timber, which is not cut at the expiration of the time specified therefor.   "Where trees are sold of a specified size, the purchaser having three years to haul the same, the title to all the trees uncut, at the end of that time, is in the vendor:" Howard v. Lincoln, 13 Me. 122; vide also Strasson v. Montgomery, 32 Wis. 52.   Whether the agreement is considered as license to enter and cut, a sale, conditional sale, or a contract to sell coupled with a license to enter, the object and extent of the grant, embrace only so much timber as the grantee cuts during the time specified.

In Pease v. Gibson, 6 Maine, 81, the purchaser contended under an almost similar clause, that the sale was an absolute one of all the trees and that the limitation was only indicative of the time in which he might enter and carry away the timber without payment of damages, but the court held that the grant

conveyed only so much as was cut and carried away during the two years.    See also Putney v. Day, 25 Am. Dec. 470.    Otherwise a purchaser might encumber the land as long as he pleased.

In White v. Foster, 102 Mass. 375, the court said: "An estate acquired by the grantee of standing timber to be removed within three years, may be regarded, either as giving full title to the trees, defeasible by failure to cut and remove the same within three years, together with such interest in the grantee's other lands, by way of easement or incorporeal right, as is necessary to the enjoyment of the estate granted, or as giving to the purchaser a leasehold in the premises, for three years, with the right of appropriation to be exercised during the term; and that in either aspect there is a good defense against a subsequent purchaser of the land, without notice of the previous purchase of the trees, even, although the deed was not regularly recorded."    Vide also Webber v. Proctor, 89 Me. 404 (36 Atl. Repr. 631); Kellam v. McKinstry, 69 N. Y. 264; Utley v. Wilcox Lumber Co., 59 Mich. 263 (26 N. W. Repr. 488); Gamble v. Gates, 92 Mich. 510 (52 N. W. Repr. 941).

In Pattison's Appeal, 61 Pa. 294, the Supreme Court said: "We regard a contract for standing timber on a tract of land, to be taken off at discretion as to time, as an interest in land, and within the statute of frauds and perjuries."    In McClintock's Appeal, 71 Pa. 365, the distinction between a contract to take off the timber at discretion, and one contemplating an immediate severance, is thus pointed out: "In agreements for the reservation or sale of growing timber, whether the timber is to be regarded as personal property, or an interest in real estate, depends upon the nature of the contract and the intent of the parties.    If the agreement does not contemplate the immediate severance of the timber, it is a contract for the sale or reservation of an interest in land.    But when the agreement is made with a view to the immediate severance of the timber from the soil it is regarded as personal property:" Robbins v. Farwell, 193 Pa. 37; Wilson v. Douglass, 10 W. N. C. 527; 4 Sharswood & Budd, Leading Cases, 516.

By the contract before us which forms the basis of this action, it reasonably and certainly appears that it was the manifest intention of Barker Brothers, when they bought from

Bennett, that the timber should be cut and removed on or before the first day of April, 1903, and that, when the defendant company purchased from Barker Brothers, the clause in the agreement was construed in like manner by Barker Brothers and the defendant company through similar provisions in relation to other tracts.   Vide also Ringrose v. Ringrose, 170 Pa. 593 ; Whitaker v. Brown, 46 Pa. 197 ; Bear v. Whisler 7 Watts, 144.

The assignments of error relating to the exclusion of evidence, of an alleged understanding in regard to the paying of a rental for the subsequent use of the property, are without merit.   The offers did not suggest more than a mere tentative proposition, or offer of compromise, which was not consummated and was entirely without consideration and hence not binding on either party, and could not throw any light on the interpretation of the contract between the plaintiff and Barker Brothers, under which defendant claims.

The plaintiff's points and the answers thereto represented by the sixth, seventh, eighth and ninth assignments of error correctly state the law applicable to the undisputed facts.

The assignments of error are overruled and the judgment is affirmed.